UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 22-CV-23980-SCOLA/GOODMAN

LILIAN GARCIA TRUJILLO,

    Plaintiff,

v.

MERICK GARLAND, Attorney General of
the United States et al.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER

Plaintiff filed a petition for a writ of mandamus, requesting that the Court compel U.S. Citizenship and Immigration Services ("USCIS") to adjudicate her Form I-526, Immigrant Petition by Alien Investor. [ECF No. 1].

Defendants filed a motion to transfer venue, seeking to have this Court transfer Plaintiff's case to the District Court for the District of Columbia. [ECF No. 6]. Plaintiff filed a response [ECF No. 9] and Defendants filed an optional reply [ECF No. 10]. Because Defendants raised a new argument in their reply (alleging for the first time that venue is not proper in this District), the Undersigned permitted Plaintiff to file a sur-reply. [ECF No. 12]. Plaintiff filed the optional sur-reply, addressing Defendants' additional argument. [ECF No. 13].

United States District Court Judge Robert N. Scola Jr. referred the motion to the Undersigned "to be heard and determined, consistent with 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of the Local Magistrate Judge Rules." [ECF No. 8]. This referral means that Judge Scola intends for the Undersigned to issue an Order, as opposed to a Report and Recommendations.[1]

---

[1] The Eleventh Circuit has yet to rule on whether a motion to transfer venue should be treated as a dispositive or non-dispositive motion; thus, there is no binding precedent as to whether the Undersigned should issue an Order pursuant to the Magistrate Judge's authority or a Report and Recommendation for review by the District Judge. *Compare United States v. Dimaria*, No. 17-20898-CR, 2018 WL 1173094, at *1 (S.D. Fla. Mar. 6, 2018); *Dunn & Fenley, LLC v. Diederich*, No. 06-6243-TC, 2010 WL 28662, at *2 (D. Or. Jan. 5, 2010) ("[B]ecause a motion to transfer venue does not address the merits of the case but merely changes the forum of an action, it is a non-dispositive matter that is within the province of a magistrate judge's authority."); *Paoa v. Marati*, No. 07-00370, 2007 WL 4563938 (D. Haw. Dec. 28, 2007) (noting that transfer of venue is a non-dispositive matter); *Holmes v. TV-3, Inc.*, 141 F.R.D. 697 (W.D. La. 1991), *with Payton v. Saginaw Cty. Jail*, 743 F. Supp. 2d 691, 693 (E.D. Mich. 2010) (collecting cases, addressing split in authority and concluding that "the magistrate judge did not have the authority to enter the order transferring venue").

The Undersigned finds the decisions of the courts which choose to treat the issue as non-dispositive more persuasive than the courts which conclude the opposite. The decisions which determine that an Order is appropriate conclude that transferring a case does not *dispose* of any claim, it only moves the claim to another location, which is a non-dispositive action (because the party may still proceed on all claims in the new forum). The decisions which determine that a magistrate judge is limited to a Report and Recommendations conclude that transferring a case (or remanding a case to state court) disposes of the litigation in the current forum and creates a domino effect where the transferred party may no longer be able to litigate because the new forum is too inconvenient. This logic is less persuasive because it rests, in part, on a definition of dispositive which includes rulings that do not dispose of claims but perhaps *discourage* a litigant from continuing forward. In the Undersigned's view, this is too expansive of a definition.

For the reasons discussed below, the Undersigned **grants** Defendants' Motion to Transfer under 28 U.S.C. § 1406.

I. Background

Plaintiff is a native and citizen of Colombia. [ECF No. 1, ¶ 4]. Seeking to obtain an immigrant visa, "[i]n April of 2020, [Plaintiff] invested $900,000 in a targeted employment area. The project consists of 99 luxury hotel rooms, 39 private condominiums, meeting and amenity space, dining restaurants, and [a] pub/bar to be constructed in Big Sky, Montana." *Id.* at ¶ 17. Following this investment, Plaintiff filed a Form I-526, Immigrant Petition by Alien Investor, with the USCIS California Service Center[2]. *Id.* at ¶¶ 4, 18. Plaintiff also "has a seafood business in the U.S." *Id.* at ¶ 71.

Plaintiff's I-526 petition remains pending and she claims that USCIS has "failed to adjudicate [her] application in a reasonable and timely manner." *Id.* at ¶ 4. According to the Complaint, venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and (e). Plaintiff says that "USCIS has a number of offices in Miami, Florida" and "[her] local address in the United States is 500 Brickell Ave. #3601, Miami, Fl.[,] 33131." *Id.* at ¶ 3.

II. Legal Standard

---

[2] In Plaintiff's response memorandum, she states that "[s]he filed her immigrant petition in *Texas* [and] USCIS transferred her petition to D.C." [ECF No. 9] (emphasis added). Whether Plaintiff's initial petition was filed in California, as alleged in her Complaint, or in Texas, as alleged in her pleadings, is inconsequential to the Undersigned's analysis because the parties agree that her petition is currently pending in D.C.

*a. 28 U.S.C. § 1404*

A district court "may transfer any civil action to any other district or division where it might have been brought" if the transfer would make the litigation more convenient or would otherwise serve the interests of justice. 28 U.S.C. § 1404(a); *In re Ricoh Corp.*, 870 F.2d 570, 572 (11th Cir. 1989).

To determine whether transfer is appropriate under § 1404(a), courts embark on a "two-prong inquiry." *Rothschild Digital Media Innovations, LLC v. Sony Comput. Entm't Am. LLC*, Case No. 14-CIV-22134, 2014 WL 12029271, at *2 (S.D. Fla. Aug. 28, 2014). First, a court must find that "the new venue must be one in which the action could originally have been brought by the plaintiff[ ]." *Id*. (citing 28 U.S.C. § 1404(a)). Second, "courts are to conduct a balancing test, weighing several private and public interest factors to determine if transfer is justified." *Id*. (citing *Steifel Lab., Inc. v. Galderma Lab., Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008); *Mason v. Smithkline Beecham Clinical Lab.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)).

The Court considers nine factors when assessing whether transfer would serve the interests of justice:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

    b. *28 U.S.C. § 1406(a)*

Under 28 U.S.C. § 1406(a), when a plaintiff has brought suit "laying venue in the wrong division or district," the district court "**shall** dismiss [the suit], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis supplied). "The interests of justice generally favor transferring a case to the appropriate judicial district rather than dismissing it." *Hemispherx Biopharma, Inv. v. MidSouth Cap., Inc.*, 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009). "A transferee court must sit within a district in which the case originally could have been brought, both with respect to venue and personal jurisdiction." *Id.* (internal quotation marks and citation omitted).

    III.    <u>Analysis</u>

Under either 28 U.S.C. § 1404 or 28 U.S.C. § 1406, the transferee district must be a district in which the case could have initially been brought. Defendants ask that this case be transferred to the District of Columbia. Defendants contend that this case could have been brought in the District of Columbia because "it is where the Immigrant Investor Program office's decisions will ultimately issue [sic] and where the deciding agency and federal officials reside." [ECF No. 6]. Plaintiff avers that the case should remain in the Southern District of Florida but does not dispute that it could have been brought in the

District of Columbia. [ECF No. 9 ("Plaintiff does not dispute that this case could have been brought in the District of Columbia since that is where Defendants reside[.]")].

In Defendants' initial motion, they contend that transfer is appropriate under 28 U.S.C. § 1404. [ECF No. 6]. Defendants do not attach any affidavits in support of their request. Instead, Defendants make generalized arguments that "witnesses with specialized knowledge about Plaintiffs' [sic] claim and the relevant regulations reside in Washington, D.C." and "the private and public factors weigh in favor of transferring this case [to the District of Columbia] . . . [because it is] the location where the relevant decisions are to be made." *Id.* Plaintiff responds that her choice of forum should be given great weight and Defendants have not met their burden to justify transfer under § 1404.

In their reply, Defendants contend for the first time (without abandoning their § 1404 arguments) that transfer or dismissal is necessary under § 1406 because "none of the facts necessary to establish venue, pursuant to 28 U.S.C. § 1391(e)(1), exist." [ECF No. 10 (footnote removed)]. Because this argument was raised for the first time in Defendants' reply memorandum, the Undersigned permitted Plaintiff to file a sur-reply. In Plaintiff's sur-reply, she argues that venue is appropriate in this District because "Defendants perform a significant amount of their duties here and Miami is where any interview of [sic] biometrics would be conducted." [ECF No. 13].

If Defendants had relied on only their argument that transfer is necessary under 28 U.S.C. § 1404, then the Undersigned would deny Defendants' request. As Plaintiff

6

correctly notes in her response, under § 1404, "[Defendants] bear[ ] the burden of showing that the proposed transferee court is the more appropriate forum and the 'plaintiff's choice of forum receives deference unless [ ] [D]efendant[s] makes the necessary showing.'" [ECF No. 9].³

Defendants address only one of the nine factors that the Court is to consider when determining whether it is appropriate to transfer a case to another jurisdiction: the convenience of witnesses. However, Defendants do not identify the specific witnesses who reside in the District of Columbia, nor do they explain the nature of the purported witnesses' testimony. This type of threadbare argument is insufficient to meet Defendants' burden under § 1404. *See, e.g., J.I. Kislak Mortg. Corp. v. Conn. Bank & Tr. Co.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985) ("[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied." (internal quotations

---

³ The Undersigned is familiar with this principle of law, having reviewed myriad motions to transfer. However, Plaintiff's inaccurate case citations make it difficult for the Undersigned to determine the source of this quotation. Plaintiff includes the following citation as support for the quoted principle, "'the plaintiff's choice of forum receives deference unless the defendant makes the necessary showing[]' *Aegis Sci. Corp. v. Millennium Labs. Inc.* (S.D. Fla. 2011)." There is no federal reporter or Westlaw citation which would allow the Undersigned to quickly find the case. More concerning, however, is that, although this case exists, it originates from the Middle District of Tennessee, not the Southern District of Florida, *see Aegis Scis. Corp. v. Millennium Laboratories, Inc.*, No. 3:11-CV-00294, 2011 WL 3420642, at *2 (M.D. Tenn. Aug. 4, 2011).

7

omitted)); *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243 (M.D. Fla. 2016) (same).

Defendants' remaining argument -- which contains no discussion -- is a conclusory assertion that the "balance of the private and public factors weighs in favor of transfer." [ECF No. 6]. Defendants then proceed to argue why Plaintiff's allegations are insufficient to support keeping the case in this jurisdiction.

However, the burden under § 1404 is not on Plaintiff to prove why this jurisdiction is appropriate, it is on Defendants to establish why the suggested transferee jurisdiction is more suitable. After being confronted by very similar arguments in Plaintiff's response, Defendants neglect to address the arguments in their reply and, instead, shift their focus to a § 1406 analysis.

A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness. *Conden v. Royal Caribbean Cruises Ltd.*, No. 20-22956-CIV, 2021 WL 4973533, at *7 (S.D. Fla. June 21, 2021) (finding that the defendant conceded counterarguments raised in the plaintiff's response by not addressing the counterargument in its reply); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) (the party's failure to address counterarguments in reply constituted abandonment of position taken in initial brief); *W. Flagler Assocs., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1297 (S.D. Fla. 2019) ("The [d]efendant abandoned its argument regarding the [p]laintiff's standing because its

[r]eply failed to address any of the [ ] arguments or authority." (alteration added; collecting cases)); *Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 220 (D.D.C. 2015) (deeming arguments abandoned where the party failed to address in its reply brief the counterarguments raised by the opposing party on the issue).

Because Defendants have not met their burden under § 1404, the Undersigned denies Defendants' motion to transfer under this statute. **However**, for the reasons discussed more thoroughly below, Defendants' argument that transfer is appropriate under § 1406 is persuasive.

Under 28 U.S.C. § 1391, a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). When a defendant "is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States," a civil action may be brought in any judicial district in which:

(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property

9

> that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

On a motion to dismiss or transfer a case "based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper." *Cf. Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (collecting cases). In evaluating the motion, the court may consider facts outside the complaint to determine whether venue is proper. *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, 565 F. Supp. 3d 1271, 1275 (S.D. Fla. 2021).

The Complaint alleges that venue is appropriate under §§ 1391(b)(2) and (e) because "USCIS has a number of offices in Miami, Florida [and] Plaintiff's local address in the United States is 500 Brickell Ave. #3601, Miami, Fl.[,] 33131." [ECF No. 1, ¶ 3]. In Plaintiff's sur-reply, she argues that venue is proper in the Southern District of Florida because "any interview of Plaintiff or required biometrics will be scheduled near Plaintiff's Miami residence" which is the only "certainty" in an otherwise dynamic application process. [ECF No. 13]. Although she does not explicitly make the connection, it appears that Plaintiff contends that this fact is sufficient to establish that Defendants reside in this jurisdiction and that a "substantial part of the events of omissions giving rise to the claim" occurred in this jurisdiction.

Neither party disputes that USCIS has multiple regional offices in South Florida. But Defendants argue that the Seventh Circuit has explicitly rejected the theory that a

10

regional office's presence is sufficient to establish an agency's residence in the location, stating:

> To hold that a federal agency can be sued Eo nomine wherever it maintains an office would, as a practical matter, render subsections (2), (3), and (4) superfluous. With the vast growth of the federal bureaucracy, federal agencies undoubtedly have offices in most, if not all, judicial districts. That being true, there would have been little need for the subsections dealing with the specifics of where the cause of action arose, where the plaintiff resides, and where relevant real estate is situated, if such an expansive interpretation of residency of defendant were intended by Congress. Moreover, such an interpretation would mean that a plaintiff could file a suit in any district regardless of how remote that district's contact may be with the litigation. "The venue statute was not intended to permit forum-shopping, by suing a federal official wherever he could be found, or permitting test cases far from the site of the actual controversy." *Hartke v. Federal Aviation Administration*, 369 F. Supp. 741, 746 (E.D.N.Y. 1973).

*Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978) (footnote omitted). Defendants also contend that because Plaintiff filed her immigration petition in Texas and adjudication of the petition is pending in Washington, D.C., none of the events or omissions giving rise to the claim occurred in the Southern District of Florida. [ECF No. 10].

In Defendants' view, Plaintiff attempts to expand the language in § 1391 to argue that venue is appropriate where an agency "related to one of the named Defendants has 'a substantial presence' or engages in 'substantial adjudications' in general even when that presence and those adjudications have nothing to do with the acts 'giving rise to the claim.'" [ECF No. 10 (internal citation omitted)].

Plaintiff does not dispute that the "mere presence of a regional office is not sufficient to establish residence," but she notes that the *Rueben H. Donnelly Corp.* Court also held that "[t]he residence of a federal officer has always been determined by the place where he performs his official duties." [ECF No. 13 (citing 580 F.2d at 266 n.3)]. Following this proclamation, Plaintiff details the dynamic nature of the USCIS process, stating that "it can be challenging to determine where its duties are performed." [ECF No. 13]. The only thing that is certain, Plaintiff says, is that any interview or required biometrics will be scheduled near Plaintiff's Miami residence. *Id.*

The remainder of Plaintiff's arguments concern the manner in which USCIS regularly transfers cases from one service center to another, changes the filing addresses for certain petitions, and that USCIS routinely, and successfully, petitions the District of Columbia District Court to transfer cases to other jurisdictions.

These arguments, however, are unconvincing. First, the sentence from *Reuben H. Donnelley Corp.* upon which Plaintiff relies speaks to the residence of *federal officers*, not to the residence of the agency. Indeed, the Seventh Circuit noted this distinction in the same footnote, stating "that venue in the Northern District of Illinois cannot be based on the residence of the five individual commissioners named as defendants . . . . As all the commissioners reside in the District of Columbia, the question here is limited to whether *the Commission itself* can be said to reside within the Northern District of Illinois." *Reuben H. Donnelley Corp.*, 580 F.2d at 266 n3 (emphasis added). This distinction makes it clear

12

that the day-to-day actions of an agency are not necessarily considered to be the actions of an agency head.

If Plaintiff's argument were taken to its logical conclusion -- that because cases are regularly transferred between branch offices and the branch office nearest the petitioner's United States' address will perform the interview and biometrics, then these Defendants must reside in the jurisdiction in which those branch offices are found -- then Plaintiff would be permitted to bring her case in any jurisdiction where one of USCIS' regional offices is located. Such a sweeping holding would "as a practical matter, render subsections (2), (3), and (4) superfluous." *Reuben H. Donnelley Corp.*, 580 F.2d at 267.

Further, courts in this District, when confronted with motions to transfer venue in cases against USCIS, have rejected any contention that the operations of the Miami regional offices are sufficient to establish that the relevant federal officers reside in the Southern District of Florida. *Brahim v. Holder*, No. 13-23275-CIV-COHN, 2014 WL 2918598, at *3 (S.D. Fla. June 26, 2014) ("First, the [d]efendant resides in Washington, D.C., not the Southern District of Florida, for venue purposes. *See* 28 U.S.C. § 1391(e)(1)(A); *F.T.C.*, 580 F.2d at 267. Second, no events or omissions giving rise to the claim occurred in this district because [the] [p]laintiff's I–601 and I–212 applications were considered at the USCIS field office in Rome, Italy, not the Southern District of Florida. *See* 28 U.S.C. § 1391(e)(1)(B)."); *Hernandez v. USCIS*, No. 21-20355-CIV, 2021 WL 9408841, at *2 (S.D. Fla. Aug. 31, 2021) ("Merely maintaining offices within a district does not mean a federal

13

defendant resides in that district. *See* Wright & Miller, Federal Practice & Procedure § 3815 (noting that courts 'have rejected arguments that an agency resides wherever it has a regional office'). [The] [d]efendant['s] headquarters are in Camp Spring, Maryland. Therefore, [the] [p]laintiff's contention that venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(A) because [the] [d]efendant resides here fails.").

Plaintiff's argument that venue is appropriate because this jurisdiction is where a "substantial part of the event or omissions giving rise to the claim occurred" also fails. The foundation for this argument is the same as the previous argument: Miami is where any interview (if scheduled) and any capturing of biometrics will take place. Plaintiff cites to the USCIS Policy Manual, which provides that "[u]less USCIS determines that an interview is unnecessary, the case should be relocated to the field office with jurisdiction over the applicant's place of residence *once the case is ready for interview*." USCIS Policy Manual, Chapter 5 - Interview Guidelines, 2017 WL 2126541 (emphasis added).[4]

---

[4] Plaintiff also contends that it is certain that her biometrics will be taken in the Southern District of Florida. [ECF No. 13 ("The only certainty is that any interview or required biometrics will be taken near the applicant's U.S. residence, which is in Miami.")]. However, she provides no citation in support of this contention. The Undersigned's own research reveals that her argument concerning biometrics is unsupported by USCIS' Policy Manual:

> After a person files an application, petition, or other benefit request, USCIS schedules a biometrics appointment at a local Application Support Center (ASC). . . . Requestors residing overseas may be fingerprinted by USCIS officers overseas, a U.S. consular officer at a U.S. embassy or consulate, or at a U.S. military installation abroad.

This argument speaks to a *future* event. Plaintiff's Complaint does not concern Defendants' failure to schedule her for an *optional* interview, nor does she contend that her case is ready for an interview and Defendants are somehow delaying that process or failing to allow that step to proceed. Rather, the Complaint alleges *generally* that USCIS has been derelict in processing applications, [ECF No. 1, ¶¶ 19-23, 25-53], and that USCIS has failed to adjudicate her petition for nearly two years. Absent from the Complaint is any mention of a city or place within the Southern District of Florida (other than Plaintiff's "local address"), any mention of a required Chapter 5 interview which Defendants are refusing to conduct, or any mention of an agency employee within this District who is even aware of Plaintiff's case.

Plaintiff attempts to juxtapose Defendants' current requests with decisions from the District Court for the District of Columbia, where Government officials have successfully argued that the cases should be transferred to other jurisdictions. However, Plaintiff's citations don't address Defendants' current contention, which is that venue in this District is improper. For example, in *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 330 (D.D.C. 2020), the parties agreed "that the action could have been filed in the U.S.

---

USCIS Policy Manual, Chapter 2 - Biometrics Collection, 2020 WL 808608.

Nothing in the manual states that biometrics will be taken in the jurisdiction which the petitioner intends on residing in if the application is approved.

15

District Courts for the District of Columbia, the Central District of California, or the Central District of Illinois."

Likewise, in *Wei Lai Dev. LLC v. U.S. Citizenship & Immigr. Servs.*, No. CV 21-887 (RDM), 2021 WL 2073403, at *3 (D.D.C. May 24, 2021)[5], the Court transferred the case under § 1404 to the jurisdiction "where the USCIS service center that adjudicated [the] [p]laintiffs' petition and application is located." Similarly, in *Pasem v. United States Citizenship & Immigr. Servs.*, No. 20-CV-344 (CRC), 2020 WL 2514749, at *2 (D.D.C. May 15, 2020), the Court transferred 95 plaintiffs' cases to "the districts where the USCIS service centers that are adjudicating the plaintiffs['] visa applications are located." *See also McAfee, LLC v. USCIS*, 19-cv-2981, 2019 WL 6051559, at *1 (Nov. 15, 2019) (finding that the plaintiff could have brought its action challenging the adjudication of its H-1B petition in the Central District of California because the petition was processed by USCIS's California Service Center).

When these cases are properly read, Plaintiff's argument that Defendants are engaging in gamesmanship in an attempt to further delay her case rings hollow. In each of those cases -- just as Defendants argue here -- the Government sought to transfer the

---

[5] The *We Lai Dev. LLC* Court expressed skepticism about whether venue could be found in the District of Columbia due to USCIS' move to Maryland but declined to make the decision and noted that parties may agree on venue via stipulation. 2021 WL 2073403, at *3 n.5 (D.D.C. May 24, 2021). The Undersigned does not expect Defendants to shift course and later argue that this case should be transferred out of the District of Columbia under § 1406 because they do not believe that venue exists.

16

case to the jurisdiction in which the plaintiff's case was being adjudicated. [ECF No. 6 (arguing that transfer to the District of Columbia is appropriate "because it is where the Immigrant Investor Program office's decision will ultimately issue and where the deciding agency and federal officials reside.")]. Thus, there is no inconsistency in the Government's actions; rather, the Government consistently seeks to transfer these cases to the jurisdiction where the adjudicatory decision will be made.

Accordingly, because Plaintiff has failed to establish that venue lies in this District under 28 U.S.C. §§ 1391(b)(2) or (e), in the interests of justice, the Undersigned **grants** Defendants' motion to transfer the case to the District of Columbia pursuant to 28 U.S.C. § 1406(a).

**DONE AND ORDERED** in Chambers, Miami, Florida, on March 6, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All counsel of record